**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 17, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EL ENCANTO, INC.; HATCH CHILE
ASSOCIATION,

      Petitioners - Appellants,

v.

HATCH CHILE COMPANY, INC.;
MIZKAN AMERICAS, INC., the
successor in interest to Border Foods,
Inc.,

      Respondents - Appellees.

No. 15-2012

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:14-MC-00045-MV)**

---

Martha L. Fitzgerald, Brownstein Hyatt Farber Schreck, LLP, Denver, Colorado
(Eric R. Burris and Nury H. Yoo, Brownstein Hyatt Farber Schreck, LLP,
Albuquerque, New Mexico, with her on the briefs), for Petitioners-Appellants.

Nickay B. Manning, Law Office of Nickay B. Manning, LLC, Corrales, New
Mexico (Ross B. Perkal and Kevin Lynn Wildenstein, Southwest Intellectual
Property Services, LLC, Albuquerque, New Mexico, and Rita M. Haeusler,
Hughes Hubbard & Reed, Los Angeles, California, on the briefs, for Respondents-
Appellees.

---

Before **GORSUCH**, **EBEL**, and **BACHARACH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

The Hatch Valley may be to chiles what the Napa Valley is to grapes. Whether it's the soil, the desert's dry heat, or the waters of the Rio Grande, the little town of Hatch, New Mexico, and its surroundings produce some of the world's finest chile peppers. Just ask any of the 30,000 people who descend on the place every year for the chile festival.

One thing we know about life and the law is that where value lurks litigation will soon follow — and the Hatch Valley chile pepper supplies no exception. After the Hatch Chile Company sought to trademark the term "Hatch" for its exclusive use, a chile producing rival, El Encanto, objected. Before the Trademark Trial and Appeal Board (TTAB), a division of the Patent and Trademark Office (PTO), El Encanto argued that "Hatch" can't be trademarked both because it refers to a place and because Hatch Chile has used the term in a misleading manner. To prove its case of deception, El Encanto sought to show that Hatch Chile's products regularly include chiles that aren't even from the Hatch Valley.

As so many do these days, this seemingly mild dispute turned hot during discovery. When El Encanto asked Hatch Chile to disclose the provenance of its chiles, the company responded (maybe a little curiously) that it didn't know the answer and that El Encanto would have to ask its "co-packers and suppliers." So that's just what El Encanto did, issuing a Fed. R. Civ. P. 45 subpoena to Mizkan

2

Americas, Inc., for documents revealing the geographic source of Hatch Chile's peppers. But instead of yielding documents that request yielded motions practice. After seeming to encourage El Encanto to ask its suppliers for just this information, Hatch Chile filed a motion seeking a protective order. And Mizkan added its own motion to quash.

So apparently determined to keep the source of the chiles a secret, Hatch Chile and Mizkan offered this rather paradoxical argument in their attempt to defeat the subpoena. They began by acknowledging that parties to TTAB proceedings may use Rule 45 subpoenas to compel nonparties to produce documents at a deposition. But, they argued, requesting a deposition is a necessary precondition to any document demand. Of course, El Encanto replied that it didn't want to waste everyone's time with a deposition: documents would suffice to answer its pretty simple question. But this response didn't satisfy Hatch Chile or Mizkan, for they told the district court that, needless and wasteful though it might be, a deposition had to be convened — and because El Encanto's Rule 45 subpoena failed to seek one it had to be quashed. El Encanto's discovery request faltered, then, not because it demanded too much discovery — the usual complaint. It faltered only because El Encanto demanded too little discovery. A topsy turvy sort of argument, to be sure, but one aimed all the same at keeping the source of Hatch Chile's peppers a mystery. And one that met with considerable initial success, for the district court agreed and granted Mizkan's motion to quash.

3

So it is this curious case now comes to us. We, of course, review district court discovery rulings for an abuse of discretion. But a district court always abuses its discretion when it errs on a legal question, and we decide the presence or absence of legal error de novo. So really in cases like this, where everything turns on the interpretation of rules, regulations, and statutes, it's a bit anomalous to ask whether the district court abused its discretion. The real question is simply whether we think the district court read the law correctly. *See Frontier Ref. Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 (10th Cir. 1998). And answering that question here, we think it did not. For we see nothing in the federal rules, the relevant statute, or the applicable regulations that commands the pointless process Hatch Chile and Mizkan insist upon.

Start with Rule 45. That rule, like the rest in the Federal Rules of Civil Procedure, is supposed to be administered by courts and parties to ensure the speedy and inexpensive resolution of all cases. Indeed, the rules committee only last year amended Rule 1 to make this point unmistakable. *See* Fed. R. Civ. P. 1. So how can it be that we must insist on an application of Rule 45 that would, by everyone's estimation, ensure only needless delay and expense? Months of motions practice followed by a new subpoena and a deposition that no one really wants just to secure documents the relevance of which no one seriously disputes? Of course it's true that, years ago, Rule 45 was often read as requiring a party to notice a deposition if it wanted to compel nonparties to produce documents. But

4

it's also true that the rulemakers addressed this anomaly a quarter-century ago, adding language to make plain that parties may compel a nonparty to produce documents while "spar[ing]" everyone "the necessity" of a needless deposition. *See* Fed. R. Civ. P. 45(a)(1) advisory committee's note to 1991 amendment. So it is that nothing in the federal rules today requires the pointless process Hatch Chile and Mizkan demand.

That, though, isn't the end of the story but closer to its beginning. For the federal statute that authorizes parties to TTAB proceedings to invoke federal discovery processes, 35 U.S.C. § 24, was written long before the 1991 amendments to Rule 45. And it is the particular and maybe peculiar interaction between this statute and the federal rules, Hatch Chile and Mizkan suggest, that requires parties in TTAB proceedings to request a deposition in order to obtain documents from nonparties.

For our part, though, we just don't see it. Section 24 says this:

The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent and Trademark Office, shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, commanding him to appear and testify before an officer in such district authorized to take depositions and affidavits, at the time and place stated in the subpoena. The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent and Trademark Office.

Everyone before us agrees that this case qualifies as a "contested" one. *See Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1319-20 (Fed. Cir. 2013) (suggesting a possible definition of "contested" cases). And everyone agrees that the TTAB is a division of the PTO. *See* 15 U.S.C. § 1067. So it is everyone agrees that the first sentence of the statute allows parties like El Encanto to compel nonparties like Mizkan to appear and testify at a deposition. But of course that is not all the statute permits, for the second sentence goes on to say that "[t]he provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses *and to the production of documents* . . . shall apply." 35 U.S.C. § 24 (emphasis added). And, as we've seen, Rule 45 today affords parties the power to compel nonparties to produce documents without also convening a deposition. In this way, and following this chain of logic, it seems to us that the statute's terms are ample enough to permit the very sort of efficient discovery El Encanto seeks.

To be sure, there's room to disagree over exactly how much work the second sentence of § 24 does. Some (including this court) have suggested that it affords parties to contested PTO proceedings access to all of the Federal Rules of Civil Procedure "relating to the attendance of witnesses and to the production of documents and things," including not only Rule 45's provisions relating to nonparty discovery but also Rule 34's provisions relating to the production of documents from the parties themselves. *See, e.g.*, *Natta v. Hogan*, 392 F.2d 686,

6

690 (10th Cir. 1968) (holding that the statute "does not limit discovery to that permissible under Rule 45"); *Natta v. Zletz*, 379 F.2d 615, 618 (7th Cir. 1967); *Babcock & Wilcox Co. v. Combustion Eng'g, Inc.*, 430 F.2d 1177, 1178 (2d Cir. 1968) (per curiam). Others have suggested the second sentence does less work than that. Though the statutory language appears to afford parties to contested PTO proceedings the right to invoke *all* of the Federal Rules of Civil Procedure relating to the attendance of witnesses and the production of documents, some have argued that Congress really intended to afford parties to PTO proceedings *only* the power to compel testimony and documents from nonparty witnesses pursuant to the provisions of Rule 45. *See, e.g.*, *Frilette v. Kimberlin*, 508 F.2d 205, 209, 212 (3d Cir. 1974) (en banc) (holding that the statute refers only "to the matters encompassed by Fed. R. Civ. P. 45 . . .").

But, while which account of the statute you prefer might very well matter for other purposes, it doesn't much matter to the resolution of this appeal. On the first account, the second sentence makes the full panoply of procedures relevant to document production available to parties in contested PTO proceedings. On the second account, the statute still affords parties the right to compel nonparties to provide documents under Rule 45. Either way, parties to TTAB proceedings may invoke Rule 45 and (again) that Rule today expressly allows a party to compel nonparties to produce documents without also convening a deposition.

7

To be sure, you might at this point wonder which version of Rule 45 the statute's language means to reference. After all, § 24 was last amended in 1975, long before Rule 45's revision in 1991. So, you might ask, could it be that § 24 allows the parties to TTAB proceedings only those powers Rule 45 specified back in 1975 rather than those it specifies today? We think not. Indeed, even Hatch Chile and Mizkan don't purvey this argument. The fact is that the plain language of § 24 doesn't suggest that a reader must look to the Federal Rules of Civil Procedure as they were back when the statute was enacted. To the contrary, as written the language suggests that a reader may look to the rules as they are found on any given day, today included. And surely our job when interpreting statutes is to read them as an ordinary citizen might, not to lay spring traps for the unwary and force lay persons to become experts in the vestigial esoterica of every statute and federal rule. *See Dir., Office of Workers' Comp. Programs v. Peabody Coal Co.*, 554 F.2d 310, 322 (7th Cir. 1977); Norman J. Singer & J.D. Shambie Singer, 2B Sutherland Statutory Construction § 51:8 (7th ed. 2015) ("A statute which refers to a subject generally . . . adopts the law on the subject at the time the law is invoked, which includes all amendments and modifications subsequent to the reference statute's enactment." (footnotes omitted)).

Having exhausted two possible readings of the statute we must admit still a third can be found in currency today. Some have suggested that for a party to avail itself of any rights under § 24, it must first have the PTO's approval to do

8

so. For support, they point to the immediately preceding statute, 35 U.S.C. § 23, a provision that affords the PTO the power to "establish rules for taking affidavits and depositions required in cases in the" PTO. *See, e.g.*, *Rosenruist-Gestao E Servicos LDA v. Virgin Enters. Ltd.*, 511 F.3d 437, 447-48 (4th Cir. 2007); *Brown v. Braddick*, 595 F.2d 961, 966-67 (5th Cir. 1979); *Sheehan v. Doyle*, 529 F.2d 38, 39 (1st Cir. 1976) (per curiam). Of course, you might question whether the power to establish rules for proceedings "in cases in the" PTO also conveys the power to prescribe what rules the parties may follow once § 24 permits them entry to federal court and access to the Federal Rules of Civil Procedure. But even assuming (without deciding) it does and accepting this, the last possible interpretation of the statute anyone's suggested to us, we still don't see how Hatch Chile and Mizkan might prevail.

We don't because the PTO has issued rules allowing parties in contested proceedings like this one to make use of Rule 45's existing procedures. In patent proceedings the PTO has expressly said that parties may seek and obtain subpoenas for nonparty documents without a deposition. In fact, it has done so twice. 37 C.F.R. § 41.156(a); *id.* § 42.52. To be sure, its regulations anticipate that the parties will file a "motion" first with the PTO. But no parallel motion is required in TTAB proceedings. Indeed, the PTO's promulgated rules for TTAB proceedings are even more generous than its rules for patent proceedings, indicating that, "[e]xcept as otherwise provided," *all* of the Federal Rules of Civil

9

Procedure govern in "inter partes proceedings" (as everyone agrees this proceeding is). *Id.* § 2.116. Neither do the TTAB rules ever "otherwise provide" when it comes to Rule 45. *See id.* § 2.120.[1]

At this juncture, Hatch Chile and Mizkan reply by directing us to a sub-regulatory manual. And whether by virtue of the operation of § 23 or thanks only to judge-made doctrines of deference like *Chevron* or *Auer*, they suggest we owe this sub-regulatory manual our obeisance. And, they say, this manual *does* forbid TTAB parties from issuing document subpoenas to nonparties unless they are accompanied by a demand for a needless deposition. It seems the district court found this argument most persuasive for it is the one on which its opinion appears to rest.

---

[1] We admit we can imagine at least one further interpretation still of the relevant statutes. Section 23 speaks of allowing the Commissioner of Patents to "establish rules for taking affidavits and depositions." It does not expressly authorize the PTO to establish rules regarding other forms of discovery. So if the PTO's authorization is really required for any discovery, even that permitted in federal court under § 24, you might well wonder if discovery must be limited to affidavits and depositions alone. No one in this case, however, has suggested an interpretation remotely so aggressive. To the contrary, Hatch Chile and Mizkan (again) take as given that parties to TTAB proceedings *can* seek document discovery in federal court under some circumstances, and they do not challenge any of the PTO's various rules allowing document discovery as resting on an impermissible interpretation of the relevant statutes. Maybe someone will on some other distant day choose to pursue an argument along these lines, but the parties before us have waived anything like it.

But here too we just don't see it.  The relevant portion of the manual, called the Trademark Trial and Appeal Board Manual of Procedure (TBMP), says this:

> Requests for production may not be served on a non-party.  [Note 4[: *See* Fed. R. Civ. P. 34(a).]]  However, if a discovery deposition deponent is a nonparty witness residing in the United States, production of designated documents by the witness at the deposition may be obtained by means of a subpoena duces tecum.  [Note 5[: 35 U.S.C. § 24; Fed. R. Civ. P. 45.  *But see Dan Foam ApS v. Sleep Innovations Inc.*, 106 USPQ2d 1939, 1942-43 (TTAB 2013) (discussing notice requirement to adverse party under Fed. R. Civ. P. 45(b)(1) for a subpoena duces tecum (without deposition) issued to nonparty and noting that respondent could have sought its own subpoena of the nonparty to obtain additional documents and/or a discovery deposition).]]

TBMP § 406.01 (June 2014).

What exactly does this language mean?  Hatch Chile and Mizkan suggest that the first sentence generally prohibits a party from seeking documents from nonparties and that the second sentence provides a limited exception for situations when the nonparty is being deposed.  Maybe.  But El Encanto offers another plausible reading that yields a very different conclusion.  On this reading, the first sentence alerts parties to the truism that requests for production of documents under Rule 34 may be directed only to parties, not nonparties.  And the second sentence proceeds to explain how to get documents from nonparties.  Allowing, on El Encanto's view, parties to seek documents from nonparties either at a deposition or, as the footnote seems to explain, however permitted by Rule 45.  After all, El Encanto notes, the footnote expressly acknowledges that a party used

11

a Rule 45 subpoena without an attendant deposition in the *Dan Foam* litigation before the TTAB.

Who is right about the optimal reading of this most opaque of sub-regulatory guidance?  In the end, we think this is just another debate that doesn't matter.  It doesn't matter because the TBMP itself disavows any suggestion that it seeks to offer authoritative interpretive guidance about § 23 or § 24 that might possibly command our deference.  The manual states quite plainly that it doesn't purport to "bind[]" the TTAB or the PTO or anyone else and doesn't purport to "have the force and effect of law."  TBMP Introduction (June 2014).  Instead the TBMP says it aspires only to serve as a sort of rough-and-ready handbook, supplying some "basic information" that may prove "generally useful" to TTAB practitioners. *Id.*  And we are aware of nothing that might require a federal court to afford deference to such a self-effacing agency document, one that not only doesn't demand deference but actually disclaims it.  Maybe especially when another circuit has already found this manual not "particularly persuasive." *Rosenruist-Gestao*, 511 F.3d at 448.  And maybe especially when, if we were to read the TBMP as Hatch Chile and Mizkan suggest, it would only wind up creating a conflict between this sub-regulatory handbook and the PTO's promulgated Administrative Procedure Act notice-and-comment regulations that clearly permit the use of document-only subpoenas.  For surely if the agency is indeed so confused that it has spoken out of both sides of its regulatory mouth, it

12

has to be the side speaking unambiguously through formal rulemaking, rather than the side speaking in garbled terms so quickly disavowed, that speaks the more loudly.

At this stage we might note only that one thing further conspires to persuade us of the conclusion we reach in this case. History teaches that, when Congress first established the PTO, a problem arose because the legislature neglected to afford the office the power to force nonparty witnesses to participate in its proceedings. *See generally id.* at 444. As long ago as 1857, the Commissioner of Patents complained to Congress that this oversight seriously impeded his work because "refractory or mercenary men, availing themselves of this omission in the law . . . refused to appear or give their depositions, except upon the payment of the most exorbitant sums by the parties." U.S. Patent Office, Report of the Commissioner of Patents for the Year 1857, at 7 (1858). And by all accounts that's at least one reason why Congress eventually adopted what is now § 24 — to help the PTO secure needed evidence from recalcitrant nonparties by giving parties to its proceedings the power to seek and obtain subpoenas enforceable in federal court. *Rosenruist-Gestao*, 511 F.3d at 444; *Abbott Labs.*, 710 F.3d at 1323-24. A rationale that seems to extend not just to nonparty testimony but equally and independently to their documents. So it is we can see nothing (and no one has pointed us to anything) in the statute's history suggesting

13

that the production of nonparty documents should necessarily depend on the fortuity of a deposition.

This seemingly small case about chile pepper sourcing and document discovery has carried a surprisingly large punch, requiring us to try to fit together in a sensible way an aged statute, many and diverse judicial glosses given to that law, various agency rules — and musings — about the statute, and their interaction with amendments to the Federal Rules of Civil Procedure. We have done the best we can to fit these disparate pieces together. In having attempted that much, though, we take care to point out what we haven't attempted. We haven't sought to offer any views on the optimal interpretation of § 24 or its interaction (if any) with § 23. The long lingering circuit split that lingers there lingers there still. Neither do we purport to address Mizkan's many more prosaic objections to the subpoena under Rule 45 itself (objections about the scope of the document requests, etc.). The district court chose not to rely on these grounds in its order quashing the subpoena, and they are the sort of issues it is better equipped to address in the first instance. Today we've sought to show no more than that, consistent with any of the various statutory interpretations and regulations cited to us, a party to a TTAB proceeding can obtain nonparty documents without wasting everyone's time and money with a deposition no one really wants. We trust that this litigation might now turn away from a chase up and down the federal court system over collateral disputes related to the

14

production of documents whose relevance no one before us seriously disputes and advance toward a more informed discussion of the merits consistent with the aspirations of Rule 1.

Reversed.