THIS ORDER IS A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500

DUNN

Mailed: March 22, 2018

Opposition No. 91216585

*Kate Spade LLC*

*v.*

*Thatch, LLC*

Opposition No. 91217168

*Kate Spade LLC*

*v.*

*The Spades Trademark Company, LLC*

**Elizabeth A. Dunn, Attorney:**

This case comes up on Opposer's motion to strike Applicant's pretrial disclosures and to exclude subsequently-filed testimony declarations based on Applicant's failure to timely supplement its initial disclosures regarding three declarants. The motion is fully briefed.

BACKGROUND FACTS

In this consolidated case,[1] Opposer pleads claims of false suggestion of a connection, likelihood of confusion, and dilution, all concerning its KATE SPADE

---

[1] Opposition No. 91216585 is designated as the "parent" case, and all TTABVUE citations are to that opposition proceeding. Because the two applicants are affiliated companies with

mark. Opposer's mark is used in connection with, among other things, clothing and handbags. Opposer has pleaded ownership of several pertinent registrations, as well as common law rights. The applications against which these claims are asserted are for the marks PATIO BY THE SPADES and THE SPADES, also for clothing and handbags (the subject of the opposed Trademark Act Section 1(b), 15 U.S.C. § 1051(b), applications).

Applicant's Initial Disclosures. Applicant's initial disclosures identified its principals as persons knowledgeable about "Use and ownership of the Applicant's mark; Applicant's planned business operations and activities, including goods and services for which Applicant plans to use the mark, Applicant's trademark application, and facts and defenses alleged in the notice of opposition and answer" and a "representative from Opposer, to be determined" as knowledgeable about "Use and ownership of Opposer's mark; Opposer's business operations and activities, Opposer's products and services, Opposer's trademark applications and registrations, Opposer's assertion of fame, and facts alleged in the notice of opposition and answer." 102 TTABVUE 32-34. Applicant's initial disclosures also identified categories of documents that may be used to support its claims or defenses, including "Documents reflecting third party use and registration of marks similar to Applicant's."

During discovery, Applicant deposed Opposer's former in-house counsel Geri Mankoff-Elias concerning, among other things, her knowledge of third-party use.[2]

---

common controlling ownership and management, this order refers to Applicant in the singular.

[2] Because the deposition is designated as confidential, it will not be described in more detail.

Trial periods were extended by agreement and suspended pending disposition of contested discovery motions.

Applicant's Supplemental Disclosure. On January 19, 2017, during Opposer's trial period, Applicant supplemented its initial disclosures to identify "Nart-anong Chinda, employee of Cowan, Liebowitz & Latman, P.C., co-counsel to Applicants" as a witness to testify on "[a]uthentication of recently obtained third party use goods for use at trial," as well as "third party use witnesses to be determined" to testify on "[a]uthentication of third party use goods and services and use of third party marks." 102 TTABVUE 41-43. Ms. Chinda is one of the subjects of this motion. Applicant also served Opposer with documents demonstrating third party use of SPADE marks with its supplemental initial disclosures.

On January 26, 2017, Opposer offered the confidential testimony of Ms. Mankoff-Elias regarding Opposer's efforts to enforce its trademark rights.

Applicant's Pretrial Disclosures. On February 17, 2017, Applicant served pretrial disclosures identifying Ms. Chinda as a witness to testify on "[t]hird party use of marks similar to Applicants' and Opposer's marks and/or goods or services" and to "authenticate purchases of third party use goods"; and to introduce exhibits "concerning third party uses of marks similar to Applicants' and Opposer's marks and/or goods or services." Applicant's pretrial disclosures also identified third-party witnesses Gabriel Mann and Medhi Neyestanki (the other two subjects of this motion) to testify on "[a]doption, use and/or registration of third party marks incorporating SPADE, SPADES and/or SPADE DESIGNS or similar marks" and to introduce

3

exhibits "concerning the use and/or intended use or registration of third party marks incorporating SPADE, SPADES and/or SPADE DESIGNS or similar marks." 102 TTABVUE 45-49.

Applicant's Submission of Declaration Testimony. Applicant filed testimony by declaration of Ms. Chinda, Mr. Mann, and Mr. Neyestanki, and Opposer filed notice of its election to cross-examine the three declarants.

On May 19, 2017, the Board issued an order granting an intervening motion to quash the notice of election of cross-examination as to the location of the cross-examination, suspended any cross-examination pending disposition of this motion to strike the pretrial disclosures and testimony declarations, and reset briefing on this motion.

LEGAL STANDARD

Each party to an inter partes proceeding must serve initial disclosures that identify "each individual likely to have discoverable information ... that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1); *see* Trademark Rules 2.116(a) and 2.120(a)(2)(ii), 37 C.F.R. §§ 2.116(a) and 2.120(a)(2)(ii). Parties are also required to supplement their initial disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A*); quoted in Spier Wines (PTY) Ltd. v. Shepher*, 105 USPQ2d 1239, 1241 (TTAB 2012).

The Board's rules also require the service of pretrial disclosures. Trademark Rules 2.120(a)(2)(iii) and 2.121, 37 C.F.R. §§ 2.120(a)(2)(iii) and 2.121. Pretrial disclosures must "disclose the name and, if not previously provided, the telephone number and address of each witness from whom [the disclosing party] intends to take testimony, or may take testimony if the need arises, general identifying information about the witness, such as relationship to any party, including job title if employed by a party, or, if neither a party nor related to a party, occupation and job title, a general summary or list of subjects on which the witness is expected to testify, and a general summary or list of the types of documents and things which may be introduced as exhibits during the testimony of the witness." Trademark Rule 2.121(e), 37 C.F.R. § 2.121(e).

Before addressing the specifics of this case, the Board notes that determining a motion to strike pretrial disclosures does not alter the longstanding policy against addressing substantive evidentiary objections prior to final hearing. *Genesco Inc. v. Martz*, 66 USPQ2d 1260, 1263 (TTAB 2003); *M-Tek Inc. v. CVP Systems Inc.*, 17 USPQ2d 1070, 1073 (TTAB 1990). The Board does not read testimony, make prospective or hypothetical evidentiary rulings, or determine the probative value of evidence prior to final hearing. *See ProMark Brands Inc. v. GFA Brands, Inc.*, 114 USPQ2d 1232, 1239 n.32 (TTAB 2015); *Weyerhaeuser Co. v. Katz*, 24 USPQ2d 1230, 1233 (TTAB 1992). No matter what the pretrial or trial motion is titled, the determination of a motion that requires consideration of the substance of trial evidence, and not merely whether the evidence meets the applicable procedural

requirements, including disclosure requirements, is deferred. *Carl Karcher Enterprises Inc. v. Carl's Bar & Delicatessen Inc.*, 98 USPQ2d 1370, 1371 n.2 (TTAB 2011) (substantive objections to specific documents or exhibits introduced by the testimony of opposer's witness as being beyond the scope of the disclosure deferred to disposition at final decision). Prior to trial, disclosures are evaluated only for compliance with the procedural rules. *Spier Wines (PTY) Ltd. v. Shepher*, 105 USPQ2d at 1240.

Turning to the merits of the motion to strike, Fed. R. Civ. P. 37(c)(1) governs whether evidence will be excluded for failure to disclose, or allowed because the failure to disclose is substantially justified or harmless. *Great Seats Inc. v. Great Seats Ltd.*, 100 USPQ2d 1323, 1327 (TTAB 2011) (*Great Seats*) (citing *MicroStrategy, Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 77 USPQ2d 1001, 1009-10 (Fed. Cir. 2005) and *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)). The five-factor test to determine whether to strike pretrial disclosures involves: "1) the surprise to the party against whom the evidence would be offered; 2) the ability of that party to cure the surprise; 3) the extent to which allowing the testimony would disrupt the trial; 4) importance of the evidence; and 5) the nondisclosing party's explanation for its failure to disclose the evidence." *Great Seats,* 100 USPQ2d at 1327.

Opposer argues none of the three witnesses at issue (Ms. Chinda, Mr. Mann, and Mr. Neyestanki) were identified in Applicant's initial disclosures or during discovery, that Applicant's supplemental initial disclosures served during Opposer's trial period

were untimely and deficient, that Opposer was unfairly deprived of the opportunity to seek discovery from the witnesses, and so the disclosures in consequence should be stricken. The Board first addresses whether Applicant's supplemental initial disclosures are deficient.

a) Witness Nart-anong Chinda[3]

There is no disagreement that Ms. Chinda's testimony describes her gathering evidence of third party use by making purchases and printing out Internet information. Because Applicant's initial disclosures, supplemented initial disclosures, and pretrial disclosures are entirely consistent in providing the necessary notice that Applicant would submit documentary evidence of third party use at trial, there has not been any failure to disclose with respect to Ms. Chinda's testimony.

An authenticating witness does not testify as to her own knowledge, independent of the documents to be introduced, but testifies only as to the actions taken to acquire the documentary evidence made admissible by her testimony. *See* Federal Rule of Evidence 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). The probative value of non-testimonial evidence of third party use is limited to what it shows on its face; it does not establish

---

[3] In its reply brief, Opposer contends that Applicant's disclosures regarding Ms. Chinda's testimony are untimely, violate Applicant's disclosure obligations, and the testimony should be precluded, but offers to withdraw the motion to exclude testimony with respect to Ms. Chinda. If a party withdraws a motion, the Board generally gives it no consideration. But here, because Opposer apparently reserves the right to attack the disclosures and testimony at a later date, and the motion has been fully briefed, the Board does not accept Opposer's qualified withdrawal, but addresses the merits of the motion.

the truth of the matter asserted in the documents. *Ayoub, Inc. v. ACS Ayoub Carpet Serv.*, 118 USPQ2d 1392, 1403 (TTAB 2016). In other words, authentication testimony for documents does not add substantively to the evidence.

In this case, as trial neared, Ms. Chinda collected the third party use evidence, and this evidence, as well as Applicant's planned use of Ms. Chinda as an authenticating witness were promptly disclosed. Applicant supplemented its initial disclosures, which identified documents on third party use, to indicate how the previously-disclosed third party use documents would be introduced into evidence, namely through the testimony of the authenticating witness.[4] This supplemented initial disclosure is sufficient.

Because there is no deficiency in Applicant's disclosure of this evidence, the subsequent pretrial disclosure of the identity of the authenticating witness is timely and the motion to strike the pretrial disclosure of Applicant's authenticating witness Nart-anong Chinda is DENIED.[5]

---

[4] Under the Board's rules and practice, except for documents deemed to be self-authenticating, "[t]estimony affidavits, declarations and depositions are the means by which a party may introduce into the record not only the testimony of its witnesses, but also those documents and other exhibits that may not be made of record by notice of reliance." Trademark Trial and Appeal Board Manual of Procedure (TBMP) § 703.01(a) (June 2017).

[5] Applicant notes that Opposer's response to an earlier motion states in a footnote "While Opposer has ultimately elected not to [cross-examine] Ms. Chinda, it still preserves its objection to Applicant's late disclosure of the witness." 105 TTABVUE 3. Opposer has not formally withdrawn its election to cross-examine, and the statement was made before the disputes regarding the testimony were resolved. As the parties were informed by the Board's May 19, 2017 order, the right to seek cross examination is integral to the right to offer testimony by declaration. *Cf. B&B Hardware, Inc. v. Hargis Industries, Inc.*, 135 S. Ct.1293, 113 USPQ2d 2045, 2049 (2015). Accordingly, the Board does not find that Opposer has waived that right here. However, given the nature of Ms. Chinda's testimony in authenticating documents, it would appear that any cross examination may be very short and limited. *See Sheetz of Del., Inc. v. Doctor's Assocs. Inc.*, 108 USPQ2d 1341, 1347 (TTAB

b) Witnesses Gabriel Mann and Medhi Neyestanki

Applicant's initial disclosures, even as supplemented, do not *specifically* identify the possibility of testimony from Mr. Mann, Principal of Four Jack Brothers, Inc. aka Jack of Spades Enterprises, or Mr. Neyestanki, Principal of Spade Skin Care & More. Opposer was first provided with the witnesses' names in Applicant's pretrial disclosures.

As set forth above, however, the initial disclosures do identify third party use as a category of documents that may be used at trial. Applicant's supplementation to its initial disclosures described unnamed "third party use witnesses" who would testify on "[a]uthentication of third party use goods and services and use of third party marks." Applicant's pretrial disclosures then specifically identified Mr. Mann and Mr. Neyestanki, and described the subject of their testimony as "[a]doption, use and/or registration of third party marks incorporating SPADE, SPADES and/or SPADE DESIGNS or similar marks" and the introduction of exhibits "concerning the use and/or intended use or registration of third party marks incorporating SPADE, SPADES and/or SPADE DESIGNS or similar marks."

Turning first to the fourth *Great Seats* factor, the importance of the evidence, Applicant contends that a significant number of third parties are using SPADE marks, and the evidence of third party use may be dispositive in this proceeding.[6]

---

2013) (*Sheetz*) ("the Board reviews the evidence of third party use for what it shows on its face, not by how it was obtained.").

[6] Under *Great Seats*, the Board considers in general terms the parties' arguments and case law regarding the importance of that type of evidence with respect to the pleaded claims and defenses. *See Spier Wines (PTY) Ltd. v. Shepher*, 105 USPQ2d at 1244 ("In determining the importance of the evidence or testimony to the fair adjudication of the proceedings, the Board

Opposer's vague argument that the testimony regarding third party use could be within the general knowledge of other witnesses that Applicant may call is not persuasive. The Federal Circuit has held, in two cases involving, as here, a likelihood of confusion claim, that evidence of the extensive registration and use of a term by others can be powerful evidence of the term's weakness. *See Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. v. Millennium Sports, S.L.U.*, 797 F.3d 1363, 116 USPQ2d 1129, 1136 (Fed. Cir. 2015); *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 115 USPQ2d 1671, 1674 (Fed. Cir. 2015). Accordingly, this factor favors Applicant.

Turning next to the fifth *Great Seats* factor, Applicant's explanation for its failure to disclose Mr. Mann and Mr. Neyestanki, Applicant contends that it did not ascertain the identities of the possible trial witnesses until early in February 2017, and served its pretrial disclosures on February 17, 2017. Opposer does not argue that Applicant was aware of the witnesses' identity earlier in the proceeding.[7] Instead, Opposer accepts the explanation, but characterizes this as "dilatory trial preparation"

---

will consider various factors, including whether the testimony is cumulative or if evidence can be introduced by other means, and whether the proposed testimony would be admissible."); *Great Seats,* 100 USPQ2d at 1328 ("the testimony of the additional witnesses may be important [because] Opposer ... must establish its prior rights in the GREAT SEATS mark to prevail on its Section 2(d) claim ... The Board notes, however, that opposer has two witnesses ... upon whom opposer may rely in support of this opposition."). Determining the importance of the evidence in connection with pretrial disclosures is not equivalent to determining the probative value of evidence, and does not require reading the evidence.

[7] The case upon which Opposer relies most in arguing for exclusion has significantly different facts. There the witness was known to the non-disclosing party from the beginning of the proceeding; the witness should have been listed in both initial disclosures and discovery responses; and the identification of the witness in pretrial disclosures resulted in prejudicial surprise to the adverse party. *Spier Wines (PTY) Ltd. v. Shepher*, 105 USPQ2d at 1244.

designed to thwart discovery. The Board disagrees. There is "no duty to conduct an investigation of third party use during discovery," and evidence of third party use may be "obtained or created by applicant in anticipation of its testimony period." *Rocket Trademarks Pty Ltd. v. Phard S.p.A.*, 98 USPQ2d 1066, 1071-72 (TTAB 2011) (*Rocket*). *Accord Sheetz,* 108 USQ2d at 1348.[8]

A party is not required, in advance of trial, to disclose each document or other exhibit it plans to introduce. *British Seagull Ltd. v. Brunswick Corp.*, 28 USPQ2d 1197, 1201 (TTAB 1993), *aff'd*, 35 F.3d 1527, 32 USPQ2d 1120 (Fed. Cir. 1994); *Sports Auth. Mich., Inc. v. PC Auth., Inc.*, 63 USPQ2d 1782, 1788 (TTAB 2001). This did not change with the Board's adoption of initial and pretrial disclosures. MISCELLANEOUS CHANGES TO TRADEMARK TRIAL AND APPEAL BOARD RULES, 72 Fed. Reg. 42242, 42246 (August 1, 2007) ("Pretrial disclosures are governed by Federal Rule 26(a)(3), but the Board does not require pretrial disclosure of each document or other exhibit that a party plans to introduce at trial under Rule 26(a)(3)(C)."). Accordingly, this factor also favors Applicant.

---

[8] In the *Rocket* case, which addressed facts arising before the Board's adoption of the disclosure model, the Board overruled the objection to documentary evidence of third party use which had not been produced during discovery. The Board found that the evidence of third party use had not yet been collected during discovery, and that the period between the close of defendant's testimony period and the opening of plaintiff's rebuttal testimony period was sufficient to prepare any rebuttal to this evidence.

In the *Sheetz* case, in which the parties waived pretrial disclosures, the Board overruled objections to the testimony of undisclosed declarants on third party use, finding the failure to supplement its initial disclosures or discovery responses was harmless. More specifically, the Board found no surprise in the testimony of the third party use declarants because the declarants either had received cease and desist letters from applicant, or because both parties had submitted evidence of third party use earlier in the proceeding, so "applicant is hard-pressed to argue convincingly that it was surprised that opposer attempted to introduce the declaration of two additional restaurateurs." *Sheetz,* 108 USPQ2d at 1346.

Turning to the first *Great Seats* factor, Applicant contends that there was no surprise to Opposer, or need to individually identify the witnesses before pretrial disclosures, because Applicant's initial disclosures listed third party use as a category of evidence upon which Applicant could rely at trial, and the third party use by both Jack of Spades Enterprises and Spade Skin Care & More was known to Opposer. More specifically, Applicant points out that Opposer itself produced evidence of this use during discovery and submitted it as evidence during its trial period. Without describing confidential matter, the record demonstrates that Opposer knew of the two parties as third party users, and was aware of the subject matter ultimately covered by the testimony of Mr. Mann and Mr. Neyestanki. Even if Opposer was not aware of every fact set forth in their declarations, the record reflects that it was aware of the pertinent information therein. *See Galaxy Metal Gear Inc. v. Direct Access Tech., Inc.*, 91 USPQ2d 1859 (TTAB 2009) ("there is no need, as a matter of course, to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery, including the identity of the witness."); Fed. R. Civ. P. 26(e) Notes of Advisory Committee on Rules – 1983 Amendment ("no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition. . . ."). This factor favors Applicant.

Turning to the second and third *Great Seats* factors, i.e., the non-offering party's ability to cure the surprise and the disruption to trial if the testimony is allowed,

notwithstanding the listing of third party use in Applicant's initial disclosures, Opposer did not seek discovery regarding third party use. Opposer did not claim surprise upon receipt of the supplemented initial disclosures which disclosed that Applicant would submit testimony on third party use as well as documentary evidence. Instead, more than three months after Applicant supplemented its initial disclosures, Opposer argues in its motion to strike that cross examination is not sufficient to test the testimony of Mr. Mann and Mr. Neyestanki, and that discovery is necessary to obtain documents which will verify statements regarding their testimony on third party use. Opposer's argument is not persuasive. Based on the limited nature of the testimony regarding third party use, broad discovery is unnecessary. Opposer is free to challenge the evidence about third party use.[9] Any need for Opposer to have learned about Applicant's evidence earlier could have been addressed months ago and Opposer has only its own inaction to blame. Accordingly, the second and third factors favor Applicant.

On balance, because Applicant's failure to disclose in the supplemented initial disclosures the identity of the witnesses who would be testifying as to the disclosed

---

[9] Documents necessary for cross examination may be obtained from a non-party by means of a subpoena *duces tecum* issued by the appropriate U.S. district court. *See generally* Fed. R. Civ. P. 45; *El Encanto, Inc. v. Hatch Chile Co., Inc.*, 825 F.3d 1161, 119 USPQ2d 1139, 1144 (10th Cir. 2016); *Dan Foam ApS v. Sleep Innovations, Inc.*, 106 USPQ2d 1939, 1942 (TTAB 2013); TBMP § 404.03(a)(2). As the parties were advised in the Board's order of May 19, 2017, when choosing a declarant, the proffering party must weigh its ability to make the declarant available for cross examination, or risk the Board's refusal to consider the testimony.

subject of third party use is both substantially justified and harmless, the motion to strike the pretrial disclosure of Mr. Mann and Mr. Neyestanki is DENIED.[10]

PROCEEDINGS ARE RESUMED.

Opposer is ordered to file a new notice of election of cross examination to be completed within thirty days from the mailing date of this order. Remaining dates are reset below.

| | |
|---|---|
| Plaintiff's Rebuttal Disclosures Due | 5/18/2018 |
| Plaintiff's 15-day Rebuttal Period Ends | 6/10/2018 |
| Plaintiff's Opening Brief Due | 8/9/2018 |
| Defendant's Brief Due | 9/8/2018 |
| Plaintiff's Reply Brief Due | 9/23/2018 |
| Request for Oral Hearing (optional) Due | 10/3/2018 |

In each instance, a copy of the transcript of testimony together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony. Trademark Rule 2.l25, 37 C.F.R. § 2.125. An oral hearing will be set only upon request filed as provided by Trademark Rule 2.l29, 37 C.F.R. § 2.129.

---

[10] We further note that to the extent that Mr. Mann and Mr. Neyestanki's testimony serves to impeach the confidential testimony of Opposer's witness and former counsel Ms. Mankoff-Elias, it is also allowed without disclosure under Fed. R. Civ. P. 26(a)(1)(A)(i) and 26(a)(3)(A).