FILED
United States Court of Appeals
Tenth Circuit

December 4, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HESHIMO YAPHET CARR,

> Plaintiff - Appellant,

v.

EL PASO COUNTY, COLORADO;
CORRECT CARE SOLUTIONS;
BAMBI CREEK, HSA CORRECT
CARE SOLUTIONS,

> Defendants - Appellees.

No. 18-1196
(D.C. No. 1:17-CV-02944-LTB)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **MATHESON**, and **EID**, Circuit Judges.

Plaintiff-Appellant Heshimo Yaphet Carr filed an action pursuant to 42

U.S.C. § 1983 alleging that Defendants-Appellees El Paso County, Colorado ("El

Paso County"), Correct Care Solutions, and Ms. Bambi Creek were deliberately

---

[*]    After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist in the
determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G).
The case is therefore ordered submitted without oral argument. This order and
judgment is not binding precedent, except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

indifferent to his broken foot while he was detained at El Paso County's jail. The district court dismissed the case as legally frivolous pursuant to 28 U.S.C. § 1915A(b). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude that Mr. Carr has plausibly alleged an Eighth Amendment violation against Ms. Creek, but has failed to plausibly allege the requisite personal involvement to support his Eighth Amendment claims against either El Paso County or Correct Care Solutions. We thus **affirm in part**, **reverse in part**, and **remand** the case for further proceedings.

I

Mr. Carr was a pretrial detainee in El Paso County's jail.[1] El Paso County had contracted with Correct Care Solutions to supply the jail with medical providers; Ms. Creek was one of them. Though Mr. Carr had a broken foot and had been ordered by "UC Health Doctors"[2] to "remain in [a medical] boot and [to] place no weight on" the foot, "[o]n or about March 24 – April 30 2017," Ms. Creek "order[ed] that [Mr. Carr] lose access to" the medical boot, as well as his wheelchair and crutches. R. at 122; *see also id.* at 130. This order was "against express[] UC Health [Doctors'] written orders." *Id.* at 130. The "decision to remove all supports forced [Mr. Carr] to hobble on [his] broke[n] foot," resulting

---

[1] These allegations come from Mr. Carr's second amended complaint, the operative one here. R. at 119–32 (Prisoner Compl., filed Mar. 26, 2018).

[2] The second amended complaint does not further specify the identity of "UC Health Doctors."

2

in "new breaks in bones of [the] broke[n] foot," "lasting damage," "intensified pain, [and] trouble healing proper[ly]." *Id.* at 122. A follow-up x-ray demonstrated the fresh breaks.

Mr. Carr alleges that Ms. Creek, in ordering the complete removal of his foot supports, "acted knowingly, oppressively and abusively, showing deliberate indifference." *Id.* at 130. He likewise alleges that "Correct Care Solutions and . . . [Ms.] Creek showed complete indifference and lack of concern for the care or healing of [his] damaged foot," and that "[t]his is a clear case of negligent medical attention and treatment." *Id.* at 122. Moreover, Mr. Carr alleges that he is suing Correct Care Solutions "for their part in enabling [Ms.] Creek the authority she had to violate [him] and injure [him]," and El Paso County "for hiring Correct Care Solutions to do medical care on [him] and not giving [him] access to any other provider." *Id.* at 125.

Mr. Carr filed a § 1983 complaint in state court. El Paso County removed the case to federal court. A federal magistrate judge sua sponte reviewed the complaint pursuant to § 1915A, which compels the district court to review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The magistrate judge twice ordered Mr. Carr to file an amended complaint with additional factual detail. After Mr. Carr filed his second amended complaint, the district judge dismissed the case as legally frivolous pursuant to § 1915A(b),

3

stating that Mr. Carr had not alleged "a cognizable medical treatment claim under the Eighth Amendment" since he "fail[ed] to allege specific facts that demonstrate any Defendant personally participated in the alleged deliberate indifference to his serious medical need." R. at 135–36 (Dist. Ct. Order, dated Apr. 6, 2018).

**II**

"[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "This court reviews frivolousness dismissals for an abuse of discretion." *Conkle v. Potter*, 352 F.3d 1333, 1335 n.4 (10th Cir. 2003). However, when, as here, the district court's decision turns on "a legal issue," "we must review" that decision de novo. *Id.*; *see Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009) (reviewing de novo a dismissal pursuant to § 1915A(b) that was based on the legal determination that the prisoner's complaint did not state a claim upon which relief could be granted). This is because "a district court always abuses its discretion when it errs on a legal question, and we decide the presence or absence of legal error de novo." *El Encanto, Inc. v. Hatch Chile Co., Inc.*, 825 F.3d 1161, 1162 (10th Cir. 2016); *accord Dronsejko v. Thornton*, 632 F.3d 658, 671 (10th Cir. 2011).

Thus, we ask whether Mr. Carr's second amended complaint contains sufficient facts to "state a claim to relief that is plausible on its face," taking all well-pleaded facts, but not conclusory allegations, as true and construing them in

4

the light most favorable to him. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Finally, "we must construe a pro se appellant's complaint liberally," and "[d]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Kay v. Bemis*, 500 F.3d 1214, 1217–18 (10th Cir. 2007) (quoting first *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002), and then *Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001)). However, though we liberally construe Mr. Carr's pro se complaint, we do not act as his advocate. *See, e.g.*, *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## III

Reviewing Mr. Carr's second amended complaint, we conclude that he has plausibly alleged an Eighth Amendment violation against Ms. Creek, but has failed to state such a claim against either El Paso County or Correct Care Solutions because he improperly (albeit tacitly) seeks to hold them liable for the actions of their employees under a *respondeat superior* theory.

### A

5

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care owed to convicted inmates under the Eighth Amendment." *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 647 (10th Cir. 2017). "The Supreme Court has established a two-pronged test for deliberate indifference claims." *Id.* Under that test, "a prison official violates the Eighth Amendment [1] only if the deprivation to which the prisoner has been subjected is 'objectively sufficiently serious' and [2] only if the prison official has a 'sufficiently culpable state of mind.'" *Grissom v. Roberts*, 902 F.3d 1162, 1174 (10th Cir. 2018) (quoting *Farmer*, 511 U.S. at 834).

With respect to the first prong, "[a] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018) (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). Correct Care Solutions and Ms. Creek assume for purposes of this appeal that Mr. Carr's condition constituted "a serious medical need." Correct Care Solutions & Ms. Creek Resp. Br. at 12.

With respect to the second, subjective prong, the prison official must act

6

with "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)). To satisfy this standard, the prison official must know of and disregard "an excessive risk to inmate health or safety." *Requena*, 893 F.3d at 1215 (quoting *Mata*, 427 F.3d at 751). That is, "the official must [have been] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must [have] also draw[n] the inference." *Id.* (alterations in original) (quoting *Mata*, 427 F.3d at 751).

"But a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim." *Self v. Crum*, 439 F.3d 1227, 1234 (10th Cir. 2006); *see Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation."). "Moreover, a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins*, 165 F.3d at 811; *accord Requena*, 893 F.3d at 1216.

Finally, neither governmental entities nor private companies that governmental entities hire to perform services in their stead—such as medical providers—may be held liable under § 1983 for the "unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676

7

(citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978), for the proposition that there is "no vicarious liability for a municipal 'person' under 42 U.S.C. § 1983"); *see Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (explaining that *Monell*'s application extends to "private entities acting under color of state law"); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013) (discussing principles of municipal liability). Rather, they "will only be held liable for [their] own acts—acts [they] 'ha[ve] officially sanctioned or ordered.'" *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

**B**

As noted, Ms. Creek assumes for purposes of this appeal that Mr. Carr's condition constituted "a serious medical need," Correct Care Solutions & Ms. Creek Resp. Br. at 12, and so, with respect to her, we are only concerned with the subjective prong of the deliberate-indifference standard. Mr. Carr alleges that he arrived at the prison with a broken foot and in possession of a medical boot, a wheelchair, and crutches. He further alleges that Ms. Creek ordered these supports taken from him, thus forcing him to hobble around on his broken foot. He also alleges that the decision to remove the boot, wheelchair, and crutches was "against expressed U.C. Health [Doctors'] written orders." R. at 130.

These allegations "allow[] the court to draw the reasonable inference" that

Ms. Creek had actual knowledge of Mr. Carr's serious medical need. *Iqbal*, 556 U.S. at 678. In particular, Mr. Carr's possession of a medical boot and wheelchair were facts that would have been obvious to Ms. Creek, and "facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]"—specifically, that removal of these supports would further injure Mr. Carr's foot. *Requena*, 893 F.3d at 1215 (quoting *Mata*, 427 F.3d at 751). It would have been patent to "even a lay person" that making someone walk around on a broken foot would expose them to further harm, *id.* (quoting *Mata*, 427 F.3d at 751), and yet Ms. Creek nevertheless allegedly ordered these supports removed. In our view, based on these facts, Mr. Carr has plausibly alleged that Ms. Creek subjectively disregarded a substantial risk of serious harm to him. This case is thus fundamentally different from cases Ms. Creek cites where "there is no evidence to show that anyone would have known that" the detainee was at risk of harm. *See, e.g.*, *Martinez v. Beggs*, 563 F.3d 1082, 1090 (10th Cir. 2009). Therefore, we conclude that Mr. Carr has plausibly alleged an Eighth Amendment claim against Ms. Creek.

Ms. Creek raises two principal arguments to the contrary. She first argues that Mr. Carr's "allegation [that] Ms. Creek's alleged conduct amounted to medical negligence is not actionable." Correct Care Solutions & Ms. Creek Resp. Br. at 9. While not specifically cited by Ms. Creek, she almost certainly is referencing the second amended complaint's allegation that this was "a clear case

9

of negligent medical attention and treatment." R. at 122.

Ms. Creek is correct that "deliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. However, in using the term "negligent," Mr. Carr very likely was simply attempting—albeit inartfully and conclusorily—to affix a legal label or characterization to Ms. Creek's conduct. If we were inclined to focus on such characterizations, we certainly would recognize that Mr. Carr also attached virtually obverse legal labels when specifically describing Ms. Creek's conduct, stating that her actions were "intentional" and that she "showed complete indifference." R. at 122. These labels are facially consistent with the requisite culpable state of mind for his Eighth Amendment claim.

But conclusory labels are not our focus. *See, e.g.*, *Twombly*, 550 U.S. at 555 (noting that "a plaintiff's [pleading] obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *accord Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). This is especially true when plaintiffs are proceeding pro se. "[I]f the court can reasonably read the [pro se] pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the [pro se] plaintiff's . . . confusion of various legal theories . . . ." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notably here, notwithstanding Mr. Carr's "confusion of various legal theories," *id.*, his factual allegations indicate that Ms. Creek possessed the

10

requisite culpable state of mind—more than mere negligence. His imprecise and conclusory legal characterization of her conduct as "negligent" should not then, standing alone, preclude his Eighth Amendment claim against her.

Ms. Creek also argues that "the only legitimate inference that can be drawn is that Ms. Creek had a difference in opinion concerning whether the crutches, wheelchair, and medical boot were needed at the time she purportedly took them from [Mr.] Carr." Correct Care Solutions & Ms. Creek Resp. Br. at 13. While our cases recognize the general principle that differences in medical opinions concerning treatment are not actionable under the Eighth Amendment, those cases typically involve prison personnel applying medical judgment in choosing between different courses of treatment. *See Self*, 439 F.3d at 1234 (affirming summary judgment in prison official's favor when official provided medication that alleviated some symptoms, but failed to diagnose others); *Perkins*, 165 F.3d at 811 (affirming dismissal when patient was being treated with two drugs but wanted to additionally receive a third); *see also Boyett v. Cty. of Washington*, 282 F. App'x 667, 676 (10th Cir. 2008) (unpublished) (affirming grant of summary judgment when prison staff "exercise[d] [their] considered medical judgment" to clean prisoner's wound and provide medication instead of providing sutures (quoting *Self*, 439 F.3d at 1232)).

Here, on the other hand, Mr. Carr was completely denied all supports for his clearly broken foot—which Ms. Creek assumes for purposes of appeal was a

11

serious medical need—and there is no suggestion in the second amended complaint that Ms. Creek provided *any* alternative treatment to Mr. Carr for his foot. In our view, this is a distinction with a difference and undercuts Ms. Creek's argument. *See Self*, 439 F.3d at 1232 ("A claim is therefore actionable only in cases where the need for additional treatment . . . is obvious. And obviousness . . . requires direct or circumstantial evidence that can arise in several different contexts[, including where] . . . a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition . . . ." (citation omitted)); *Hunt v. Uphoff*, 199 F.3d 1220, 1223–24 (10th Cir. 1999) (rejecting the contention that the prisoner's allegations described "a mere disagreement as to his medical treatment," and holding that the Court could not "conclude that [the prisoner] failed to allege sufficient facts to state an Eighth Amendment claim," where (*inter alia*) the prisoner alleged that "he was denied insulin by a doctor even though it had been earlier prescribed for him by another prison doctor," and the denial was not reversed until over a year later, after the prisoner had suffered a heart attack); *see also Mata*, 427 F.3d at 758 ("Ms. Weldon did not simply misdiagnose Ms. Mata; rather, she completely refused to assess or diagnose Ms. Mata's medical condition at all . . . ."); *cf. Toler v. Troutt*, 631 F. App'x 545, 548 (10th Cir. 2015) (unpublished) (reversing denial of a summary judgment motion filed by prison officials and explaining in the process that an unpublished Tenth Circuit case was "distinguishable . . . because

12

it involved a complete denial of medication, as opposed to the substitution of alternative medicines as in this case").

We do not discount the possibility that on a more complete record—say, at the summary-judgment stage—Ms. Creek may be able to demonstrate an exercise of medical judgment that would insulate her from a claim of deliberate indifference. That question, however, is not before us. Rather, at this juncture, we must focus solely on the averments of Mr. Carr's second amended complaint, and we conclude that those averments properly plead an Eighth Amendment claim against Ms. Creek.

To be sure, we recognize that the district court's order found that "Mr. Carr fails to allege specific facts that demonstrate any Defendant personally participated in the alleged deliberate indifference to his serious medical need." R. at 136. However, the court did not specifically address—as we do here—Mr. Carr's allegations about Ms. Creek's involvement in ordering the supports removed. Relatedly, the court purported to resolve Mr. Carr's claim against Ms. Creek on the basis that "'[t]he established principles of municipal liability have been found to apply to § 1983 claims brought against private corporations' providing medical care to inmates like Correct Care Solutions and Bambi Creek." *Id.* (alteration in original) (quoting *Rhodes v. Physician Health Partners*, No. 09-cv-00482-REB-KLM, 2010 WL 728213, at *5 (D. Colo. Feb. 24, 2010) (unpublished)). But the district court never explained how municipal liability

13

principles could possibly apply to bar Mr. Carr's Eighth Amendment claim against Ms. Creek in her *individual* capacity. And Ms. Creek does not make any arguments on appeal in support of this specific aspect of the district court's approach. In the foregoing respects, therefore, we are not persuaded by the district court's reasoning.

Based on the averments of the second amended complaint, we conclude Mr. Carr has plausibly alleged that Ms. Creek acted towards him with deliberate indifference and violated his Eighth Amendment rights. The district court erred in finding to the contrary.

## C

In contrast, the district court correctly determined that Mr. Carr's claims against Correct Care Solutions and El Paso County are frivolous. Mr. Carr alleges that Correct Care Solutions and El Paso County were liable for Ms. Creek's actions because "El Paso County hired Correct Care Solutions and Bambi Creek, [and] Correct Care hired Bambi Creek." R. at 122. Elsewhere he alleges that Correct Care Solutions "enabl[ed] Bambi Creek the authority she had to violate [him] and injure [him]," and that El Paso County "hir[ed] Correct Care Solutions to do medical care" without providing him other medical-provider options. *Id.* at 125. These allegations fail to establish Correct Care Solutions's or El Paso County's personal involvement in an Eighth Amendment violation; instead, they are tacitly based solely on a *respondeat superior* theory. But El

14

Paso County, as a governmental entity, "cannot be held liable [under § 1983] for the acts of its employees on a theory of *respondeat superior*," *Brammer-Hoelter*, 602 F.3d at 1188, and neither can Correct Care Solutions, a private company acting under color of state law, *see Dubbs*, 336 F.3d at 1216. Instead, El Paso County and Correct Care Solutions "will only be held liable for [their] own acts—acts [they] 'ha[ve] officially sanctioned or ordered.'" *Brammer-Hoelter*, 602 F.3d at 1188 (quoting *Pembaur*, 475 U.S. at 480). Because Mr. Carr made no allegations suggesting that El Paso County or Correct Care Solutions did any such "sanction[ing] or order[ing]," *id.*, the claims against these defendants must be dismissed.

**IV**

Finally, Mr. Carr moved to proceed *in forma pauperis* ("IFP"). "He is unable to pay the filing fee, and this appeal is not frivolous. Accordingly, we grant Mr. [Carr's] request." *Rachel v. Troutt*, 820 F.3d 390, 399 (10th Cir. 2016). We remind Mr. Carr that this IFP status eliminates only the need for prepayment of the filing fee and he "remains obligated to pay the filing fee in monthly installments." *Id.*; *see* 28 U.S.C. § 1915(b).[3]

---

[3] In the last line of its brief, El Paso County passingly asks for attorney's fees. El Paso County Resp. Br. at 13. This request is not properly before the Court, and so we decline to address it. *See* FED. R. APP. P. 38 ("If a court of appeals determines that an appeal is frivolous, it may, *after a separately filed motion or notice from the court and reasonable opportunity to respond*, award just damages and single or double costs to the appellee." (emphasis
(continued...)

15

# V

For the foregoing reasons, we **AFFIRM** the district court's judgment as to the dismissal of claims against El Paso County and Correct Care Solutions, **REVERSE** the district court's judgment as to the dismissal of the claim against Ms. Creek, and **REMAND** for further proceedings consistent with this order and judgment. We additionally **GRANT** Mr. Carr's motion to proceed IFP.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

---

[3](...continued)
added)); FED. R. APP. P. 38, advisory committee's note to 1994 Amendment (providing that "a statement inserted in a party's brief that the party moves for sanctions is not sufficient notice"); *accord Abeyta v. City of Albuquerque*, 664 F.3d 792, 797 (10th Cir. 2011) (denying request for sanctions under Fed. R. App. P. 38 because party "failed to file a separate motion or notice requesting sanctions").